# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6272 | **DATE** | 6/21/2001 |
| **CASE TITLE** | Institute for Human Potential, Inc. vs. Dr. John T. MacDonald Foundation, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
 ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion to transfer venue to the Southern District of Florida [8-1] is denied. Status hearing is set for 7/16/01 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | 2 | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | JUN 25 2001 | |
| | Notified counsel by telephone. | | | date docketed | 17 |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | ED-7 FILED FOR DOCKETING | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 01 JUN 22 AM 11: 42 | 6/21/2001 date mailed notice | |
| MD | courtroom deputy's initials | | Date/time received in central Clerk's Office | MD7 mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| INSTITUTE FOR HUMAN POTENTIAL, INC. | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 00 C 6272<br>) |
| DR. JOHN T. MACDONALD FOUNDATION, INC. A/K/A DOCTORS HOSPITAL, | )<br>)<br>)<br>) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Institute for Human Potential, Inc. ("IHP") has brought a complaint against defendant, Dr. John T. MacDonald Foundation, Inc. a/k/a Doctors Hospital ("Doctors Hospital") alleging entitlement to $177,500 under an "account stated," costs, and 5% interest under the Illinois Interest Act, 815 ILCS 205/2, for unreasonable and vexatious delay. Before the court is defendant's motion for a transfer of venue to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1404(a). For the reasons set forth below, the court denies the motion.

## BACKGROUND

JUN 2 5 2001

In its complaint, plaintiff alleges the following facts: IHP is an Illinois corporation with its principal place of business in Schaumburg, Illinois, and Doctors Hospital is a Florida

1

corporation with its principal place of business in Coral Gables, Florida.[1] In March, 1989, the parties entered into an agreement whereby IHP would develop and coordinate an "Excellence Program" (hereafter "Program") and Doctors Hospital would pay IHP for its services. IHP subsequently developed the Program, which consisted of four distinct segments, and proceeded to implement it. From November, 1990 through May, 1991, Doctors Hospital made numerous payments to plaintiff for its services totaling $110,000. In July 1991, IHP and Doctors Hospital agreed to discontinue the Program after completion of the first two segments. Pursuant to the agreement to discontinue, Doctors Hospital agreed to pay the balance due for the first two completed segments. In a letter dated July 23, 1991, Doctors Hospitals' Executive Vice President, Arthur Tedesco, wrote to IHP's Vice President of Finance, Norman Gears, stating, in part:

> On June 25, 1990, you wrote to me requesting payment for a four segment Program to be provided to Doctors' Hospital by IHP. Recently, William H. Comte and Thomas E. Jauch met and agreed to discontinue the IHP Program with the completion of only two segments. Therefore, based on information contained in your letter of June 25, 1990 and this recent decision to discontinue the Program, I would request that your previous billing be adjusted to reflect the elimination of segments three and four. The adjustment requested is a credit of $287,500. This credit is based on each segment costing $143,750 as outlined in your June 25, 1990 letter. Once this credit is issued, the hospital will make full payment of the balance owed for Program fees.

*(See Compl.*, Ex. A). IHP credited Doctors Hospital against the balance of $287,500, for payments made to IHP in the amount of $110,000. IHP filed this complaint October 12, 2000, asserting that Doctors Hospital still owes $177,500 for services rendered. Defendant was granted

---

[1]Defendant sold the hospital that is subject of this lawsuit to HealthSouth Doctors' Hospital, Inc., a Delaware corporation, in December, 1991. The hospital is located in Miami-Dade County, Florida. *See Def.'s Mem. at 1-2, and Brier Aff.* ¶¶ 3-4.

2

until February 14, 2001, in which to answer or move for transfer of venue. Defendant has moved to transfer venue pursuant to 28 U.S.C. § 1404(a).

## DISCUSSION

A motion to transfer venue is governed by 28 U.S.C. §1404(a), which provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." To qualify for a transfer, (1) venue must be proper in both the transferor and transferee courts, and (2) the transfer must be for the convenience of the parties and the witnesses and in the interest of justice. *See Pasulka* v. *Sykes*, 131 F. Supp. 2d 988, 994 (N.D. Ill. 2001), *quoting TruServ Corp.* v. *Neff*, 6 F. Supp. 2d 790, 793 (N.D. Ill. 1998). The moving party bears the burden of demonstrating that transfer is "clearly more convenient." *Heller Financial Inc.* v. *Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989), *quoting Coffey* v. *Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986). Since the weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, the decision to transfer is committed to the sound discretion of the trial court. *Coffey*, 796 F.2d at 219. Neither party has argued that venue is improper either in

this district or in the Southern District of Florida.[2] Thus, the court must consider whether transfer is warranted for the convenience of the parties and witnesses and the interests of justice.

## A. Convenience of the parties and witnesses.

Factors the court considers and weighs in evaluating the convenience of the parties and witnesses include the plaintiff's choice of forum; the situs of material events; the relative ease of access to sources of proof in each forum; the convenience of the witnesses; and convenience of the parties of litigating in the respective forums. *Brandon Apparel Group, Inc. v. Quitman Mfg. Co.*, 42 F. Supp. 2d 821, 833 (N.D. Ill. 1999) (citations omitted).

### 1. Plaintiff's choice of forum/situs of material events.

Plaintiff's choice of forum is generally entitled to substantial deference, especially where the chosen forum is the plaintiff's home forum, *id.*, unless plaintiff's forum choice "lacks any significant contact with the underlying cause of action." *Hotel Constructors, Inc. v. Seagrave Corp.*, 543 F. Supp. 1048, 1050 (N.D. Ill. 1982). Indeed, unless the balance weighs strongly in favor of transfer, plaintiff's choice should not to be disturbed. *United Air Lines, Inc. v. Mesa*

---

[2]Although defendant asserts that it will likely dispute venue in a subsequent motion to dismiss or request a transfer of venue under 28 U.S.C. § 1406, *see Def.'s Mem.*, fn.1, defendant's § 1404(a) motion requires it to establish that venue is proper in this district, therefore, "[i]n moving for transfer under § 1404, a party concedes that venue properly lies in both the transferor and transferee district . . . ." *See Black & Decker Corp. v. Vermont Am. Corp.*, 915 F. Supp. 933, 936 (N.D. Ill. 1995). On the other hand, section 1406 specifically addresses the situation where venue is improper: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406. However, the court has already found, in its review of defendant's § 1404(a) motion, that a significant part of the events giving rise to the issues in this case likely arose in this district, a factor that is also a basis for venue. *See* 28 U.S.C. § 1391(a) (Venue is proper in a district where . . . "a substantial part of the events or omissions giving rise to the claim occurred . . . ."). Plaintiff's choice of forum does not, therefore, appear to implicate the type of venue problems for which § 1406 was enacted. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962) ("The problem that gave rise to the enactment of [§ 1406] was that of avoiding injustice which had often resulted to plaintiffs from dismissal of their actions merely because they had made an erroneous guess with regard to the existence of some elusive fact of the kind upon which the venue provisions often turn.").

4

*Airlines, Inc.*, 8 F. Supp. 2d 796, 798 (N.D. Ill. 1998); *see also Brandon Apparel*, 42 F. Supp. 2d at 833 (noting that plaintiff's choice of forum "is not absolute and will not defeat a well-founded motion to transfer"). Defendant argues that there are no significant contacts with this forum. At this early stage, it is not entirely clear what the issues will be for trial.[3] Plaintiff avers that under its "account stated" theory the dispute will be over Doctors Hospitals' agreement to "pay a sum certain to IHP for the services performed" and asserts that such agreement was tendered by way of Doctors Hospital's July 23, 1991 letter, which was sent from Mr. Tedesco in Florida to IHP offices in Illinois. *See Pl.'s Resp.* at 5, 7. On the other hand, defendant asserts it intends to challenge the "alleged 'account stated' and that performance, or non-performance, will be a hotly contested matter," *Def.'s Reply* at 1, and asserts that most of performance of the 1989 agreement to develop and implement the Program was performed in Miami, Florida, where the hospital is located.

Even assuming defendant's issues are the central issues in this case, the court concludes that plaintiff's choice of forum is entitled to substantial deference since not only is IHP incorporated in Illinois and has its principal place of business in Schaumburg, Illinois, within the Northern District, but contrary to defendant's contention, plaintiff's chosen forum does have a significant connection to the litigation. Timothy Jauch, current president and owner of IHP, who was one of seven IHP employees working on the Program, estimates that 80% of the work

---

[3] Neither party has set forth, in any way, the legal requirements for the cause of action in this case. An account stated is "an agreement between parties who previously engaged in transactions that the account representing those transactions is true and the balance stated is correct, together with a promise for the payment of the balance." *Dreyer Med. Clinic, S.C. v. Corral*, 591 N.E.2d 111, 114 (Ill. App. Ct. 1992); *see also South Motor Co. of Dade County v. Accountable Constr. Co.*, 707 So. 2d 909, 912 (Fla. Dist. Ct. App. 1998). An account stated, however, "cannot be made the instrument to create an original liability" but "is merely a form of proving damages for the breach of a promise to pay on a contract." *Dreyer*, 591 N.E.2d at 114.

performed for the Program during the first two segments took place at IHP's offices in Illinois.[4] *See* Jauch Affidavit ¶5. He stated that while "time spent in Florida consisted of the initial data collection, the Program presentation, and follow up consultation[; a]ll of the Program development occurred in Illinois[;] Doctors was in constant telephone contact with IHP in Illinois[;] and representatives from Doctors appeared at the offices of IHP in Illinois on numerous occasions." *Id.* Defendant contends that plaintiff cannot support this 80% figure.[5] Further, defendant argues that the vast majority of the work to design and implement the Program was performed in Miami in reviewing administrative systems and interviewing employees at Doctors Hospital, specifically that three IHP employees – Thomas Jauch, Timothy Jauch and Dr. Ron Martin – regularly traveled to and/or spent significant time at Doctors Hospital in Florida and that Doctors Hospital even rented an apartment for Thomas Jauch, former president of IHP (now deceased), for one-and-one-half to two years. *See* Tedesco Aff. at ¶¶ 7-8. While the court does not doubt that a considerable portion of IHP's work done for segments one and two took place at Doctors Hospital in Florida in reviewing the administrative systems of Doctors Hospital and interviewing employees, it is also reasonable that much of the early development of the program was likely done at IHP's offices in Illinois where the Program was actually developed before it was implemented, using data and information collected at Doctors Hospital in Florida.

---

[4] It is not clear from plaintiff's submissions what each segment consisted of, but plaintiff describes the Program generally as applying specially-designed performance techniques to increase defendant's employee productivity, increase revenue and reduce costs, and that: "Stage 1 . . . involved a thorough needs analysis of Doctors by IHP, followed by intensive program development efforts by IHP; Stage 2 began to implement the Program by transferring the administration from IHP to Doctors, for its own use." *Pl.'s Resp.* at 2.

[5] Defendant asserts that IHP's counsel advised counsel for Doctors Hospital that he has provided Doctors Hospital whatever records of the parties' relationship he has, but that no time or expense records were provided. *Def.'s Reply* at 2.

6

Moreover, although defendant points to three IHP employees traveling to Florida, there were seven IHP employees working on the Program, and thus, presumably four were working in Illinois. *See* Jauch Aff. at ¶ 3. Defendant also concedes that representatives of Doctors Hospital visited IHP's offices in Illinois and that there was correspondence between Florida and Illinois. *See* Tedesco Aff. at ¶¶ 9, 12. Thus, there is a significant connection to plaintiff's chosen forum – Illinois – warranting substantial deference to plaintiff's choice.

2. Relative ease of access to sources of proof.

Defendant merely argues that key documents of Doctors Hospital concerning the issues raised by plaintiff's complaint are in Miami. Defendant has not argued that, should this case proceed here, it could not easily transport these documents to Illinois. Further, plaintiff also asserts that it maintains its records in Illinois. Thus, access to the proof – documents – does not weigh heavily in the court's analysis of defendant's motion to transfer.

3. Convenience of witnesses.

Convenience of the witnesses is one of the most important factors. *See Brandon Apparel*, 42 F. Supp.2d at 834, *quoting Rose v. Franchetti*, 713 F. Supp. 1203, 1214 (N.D. Ill. 1989). In evaluating this factor, the court considers the number of witnesses located in each forum (although determination of venue should not depend on which party submits a longer witness list), and the nature, quality, and importance of their testimony. *See Rohde v. Central Railroad of Indiana*, 951 F. Supp. 746, 748 (N.D. Ill. 1997); *Brandon Apparel*, 42 F. Supp. 2d at 834. The movant bears the burden of showing who its witnesses are, the nature of their testimony, and how important that testimony will be to the case. *United Air Lines*, 8 F. Supp.2d at 799; *see also Brandon Apparel*, 42 F. Supp. 2d at 834 ("the court will not consider the convenience of

unidentified witnesses"). The court must also consider the ability to compel hostile or unwilling witnesses to attend. *Bousis v. Marriott Int'l, Inc.*, 47 F. Supp. 2d 1004, 1006 (N.D. Ill. 1999).

Doctors Hospital has identified five witnesses. Its two main witnesses appear to be Arthur N. Tedesco and William H. Comte, neither of whom currently works for defendant. *See Def.'s Mem. in Support of Mot.* at 4. Mr. Tedesco was the Executive Vice President of Doctors Hospital and Mr. Comte was the Chief Executive Officer of Doctors Hospital at the time the 1989 agreement was made, at the time the first two segments of the Program were being implemented by IHP, and at the time the parties agreed to terminate the Program. *See* Tedesco Aff. at ¶¶ 4-11. Importantly, however, neither resides in the Southern District of Florida. Mr. Tedesco resides in Connecticut and Mr. Comte resides in Dallas, Texas. *See* Brier Aff. at ¶¶ 9-10. It would be no more convenient for them to litigate in Florida than in Illinois, and if they were unwilling to testify, the defendant would not be able to compel these witnesses to testify in either forum. Doctors Hospital identifies three other witnesses all of whom currently reside in Florida. However, these witnesses, mentioned for the first time in defendant's reply brief, are insufficient to tip the balance in favor of transfer since defendant only generally states what these witnesses may testify about and fails to specify why their testimony would be important to the case.[6] *See Heller Financial*, 883 F.2d at 1294 (defendant is "obligated to clearly specify the key witnesses to be called" and indicate "the materiality of that testimony"); *Brandon Apparel*, 42 F. Supp. 2d at 834 (Finding that where defendant only generally stated what witnesses would testify

---

[6] While defendant asserts that performance will be contested, defendant only generally indicates that David From (former accounting department employee) would be able to testify about the "billing and accounting" relationship of the parties and that Rick Frieburg (former Director of Human Resources) would be able to testify about the "performance of the agreement to design and implement a four-phase program," but does not specify the materiality of their testimony. *See Reply* at 5 *and Tedesco Aff.* at ¶¶ 14-15. Defendant fails to specify the nature or materiality of Susan Dingler's (former Staff Development Coordinator) testimony.

8

about without specifying how that testimony would be important to the case, "[t]he court [would] not speculate on such matters."). Moreover, even if one or two of these witnesses might be material, plaintiff has identified at least two witnesses who reside in Illinois, including its principal witness to the underlying transaction Timothy Jauch, and former Chief Operating Officer, Dr. Ron Martin who is expected to testify to defendant's agreement to pay the balance due. Thus, this factor does not weigh in favor of, or against, transfer.

4. Convenience of the parties.

In evaluating the convenience of the litigants, the court considers their residence and their ability to bear the expenses of litigating in a particular forum. *See Brandon Apparel*, 42 F. Supp.2d at 834. "Transfer is inappropriate if it 'merely transforms an inconvenience for one party into an inconvenience for the other party.'" *Id., quoting Chemical Waste Management* v. *Sims*, 870 F. Supp. 870, 876 (N.D. Ill. 1994). It is clear that transfer to Florida would shift the inconvenience from Doctors Hospital, located in Florida, to IHP, which has its principal place of business in the Northern District of Illinois and whose current owner, Timothy Jauch, resides in Illinois. However, neither party has demonstrated that it would be especially inconvenient to litigate in the opposing party's home forum, or that one party has a better financial ability to bear the costs of the inconvenience.[7] Therefore, this factor does not weigh either for or against transfer.

---

[7]Defendant's main complaint appears to be that IHP did not press "their purported claim for payment until late 2000, more than 10 years after the Institute's first demand for payment. If an entity is forced to defend a claim more than 10 years after it was first raised, insult should not be added to injury by requiring that entity to pay for the privilege of traveling to a distant state to raise their defense." *Def.'s Reply* at 4-5. However, defendant has not provided this court with any case where delay in bringing a claim was found to be a consideration on a motion to transfer venue, or any argument as to why it should be here, especially in light of the affirmative defenses available to a party to challenge delay.

9

## B. Interests of Justice.

"The 'interests of justice factor' is a separate component of a § 1404(a) transfer analysis, and may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result." *Coffey*, 796 F.2d at 220 (internal citations omitted). This factor "embraces traditional notions of judicial economy, rather than the private interests of the litigants and their witnesses." *Brandon Apparel*, 42 F. Supp.2d at 834, *quoting TIG Ins. Co. v. Brightly Galvanized Prods., Inc.*, 911 F. Supp. 344, 346 (N.D. Ill. 1994). Considerations under the "interests of justice" factor include whether transfer would make it more likely that the litigants receive a speedy trial, whether the litigation should be transferred to a forum where consolidation is feasible, and whether, in a diversity action, transfer would foster the case being decided by a judge more familiar with the applicable law. *Coffey*, 796 F.2d at 221. In this case, defendant does not argue that it would be more likely that the litigants would receive a speedier trial in the Southern District of Florida and there is no issue of consolidation of this case with any other litigation. Therefore, the only relevant factor is whether transfer is warranted because a district judge in the Southern District of Florida would be more familiar with the applicable law. A federal court sitting in diversity applies the conflict of laws rules of the state in which it sits, here Illinois. *GATX Leasing Corp. v. Nat'l Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir. 1995). In the area of contract law, Illinois applies the "Second Restatement's 'most significant contacts' test," in which the court considers the place of contracting, negotiation, performance, location of the subject matter of the contract, and residence of the parties. *Id.* Defendant argues that Florida law will govern because the 1989 agreement involved a Florida company, the Program was to be implemented in Florida and IHP made regular lengthy visits to Florida. IHP

asserts that Illinois law will govern because the cause of action concerns a dispute over an agreement to pay for services, which agreement was tendered by way of letter, in Illinois, as were the numerous preceding payments to IHP, and in any event, the majority of the work performed for the first two segments took place in Illinois. Without deciding the choice of law issue, the court holds that even if Florida law governs, this is not a case where familiarity of a Florida federal court with state law would necessarily be entitled to determinative weight. As set forth *supra* note 3, the elements appear the same in either state, and while a court in the Southern District of Florida is likely to be more familiar with Florida law, "[f]ederal courts are often called upon to decide substantive legal questions based on the laws of various states," and certainly Doctors Hospital cannot contend that Florida contract law is "so unique as to be beyond the this court's abilities." *Brandon Apparel*, 42 F. Supp. 2d at 835. *Cf. Amoco Oil Co. v. Mobil Oil Co.*, 90 F. Supp. 2d 958, 962 (N.D. Ill. 2000) (court transferred case to New York although Illinois law governed). Therefore, transfer of this case would not clearly facilitate the interests of justice.

## CONCLUSION

Because plaintiff's choice of forum is entitled to deference in this case and defendant has failed to meet its burden that transfer would be clearly more convenient for the parties and witnesses or would facilitate the interests of justice, the court denies the defendant's motion to transfer venue to the Southern District of Florida [#8]. This matter is set for status on July 16, 2001 at 9:30 a.m.

Date: June 21, 2000   Enter: _____
                             JOAN HUMPHREY LEFKOW
                             United States District Judge

11